```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION

EGGS UNLIMITED, LLC,           )
                               )
      Plaintiff,               )
                               )
v.                             )    Civil Action File No._____
                               )
                               )
POSS SELECT PRODUCE, INC.      )
and VIRGIL C. POSS III,        )
                               )
      Defendants.              )
_____)
```

**VERIFIED COMPLAINT FOR DAMAGES**

NOW COMES Plaintiff Eggs Unlimited, LLC ("Plaintiff" or "EU") and hereby files its Verified Complaint for Damages against Defendants Poss Select Produce, Inc. ("PSP") and Virgil C. Poss III ("Poss") (collectively "Defendants") and hereby shows this Court as follows:

**Parties, Jurisdiction and Venue**

1.

Plaintiff is a California limited liability company with its principal place of business located at 3161 Michelson Drive, Suite 750, Irvine California 92612.  Plaintiff has a single member, Timothy Cohen, who is a resident of the State of California.

2.

Defendant PSP is a Georgia corporation with its principal office located at 16 Forest Parkway, Building R-2, Forest Park, Georgia 30297.  PSP may be served with process through its registered agent, Bernard Syme IV, at the following address: 16 Forest Park, Building R-2, Forest Park, Georgia 30297.  PSP is subject to personal jurisdiction in this Court.

3.

Defendant Poss is a resident of the State of Georgia and, upon information and belief, may be served with process at the following address: 775 Frog Road, Locust Grove, Georgia 30248. Poss is subject to personal jurisdiction in this Court.

4.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and (d).

**Factual Allegations**

6.

Plaintiff is engaged in the business of brokering and selling poultry eggs nationwide to customers in the food and

produce industry. Plaintiff arranges the freight between originating egg production facilities and Plaintiff's customers, which generally consist of grocery chains, foodservice distributors, and other egg companies.

7.

As a matter of general practice, prior to entering into a transactional relationship with a customer, Plaintiff requires the customer to fill out and execute a document entitled "Credit Application and Personal Guaranty of Account." Prior to its shipment of eggs to PSP, Plaintiff required that company's execution of that application (the "First PSP Application").

8.

On or about April 16, 2020, Poss, on behalf of PSP, executed the First PSP Application. A true and correct copy of the First PSP Application is attached hereto as Exhibit "1."

9.

On or about September 10, 2020, PSP executed a second Credit Application with Plaintiff (the "Second PSP Application"), with that document being signed by Chapman Syme. A true and correct copy of the Second PSP Application is attached hereto as Exhibit "2." The First PSP Application and the Second PSP Application shall be referred to collectively as the "PSP Application."

10.

The PSP Application contains a section entitled "Agreement," which contains, in pertinent part, the following provisions:

- "All invoices are to be paid NET 30 unless otherwise agreed in writing."

- "Past due accounts will be charged a finance charge at a rate of 1.5% / month."

- "Applicant [PSP] agrees to pay seller's [Plaintiff] reasonable collection costs, including, but not limited to, attorney's fees incurred by Eggs Unlimited, LLC."

*See Ex. 1 at p. 1.*

11.

In addition to these terms, the First PSP Application contains a personal guaranty executed by Defendant Poss individually (the "Guaranty"). *See* Ex. 1 at p. 2. The Guaranty is continuing in nature and ensures payment by the Guarantor (Poss) for current and future orders by PSP: "This shall be an open and continuing Guaranty." *See id*.

12.

Specifically, under the Guaranty, Poss agreed to "unconditionally guarantee payment of whatever amount said corporation, partnership, or individual *shall at any time owe to Eggs Unlimited, LLC* on account of material and goods *hereafter furnished or sold*, and *services hereafter rendered*, whether said

4

indebtedness is in the form of notes, bills, or open account." *See id.* (emphasis added).

13.

The Guaranty also allows PSP to seek payment directly from the Guarantor without asserting a claim against PSP: "In the event said indebtedness is not paid at maturity, Eggs Unlimited, LLC may resort to this guaranty without first having recourse against the named Debtor / Applicant [PSP]." *See id.*

14.

Additionally, the Guaranty establishes joint and several liability as to Poss and PSP, and entitles Plaintiff to costs of collection and attorneys' fees: "The undersigned [Poss] agrees to *jointly and severally pay* in addition to the indebtedness hereby guaranteed, reasonable interest and costs of collection hereunder including, but not limited to, reasonable attorney's fees." *See id.* (emphasis added).

15.

The Guaranty remains in effect (and maintains its status as a continuing guaranty) unless revoked upon mutual agreement, with any such revocation request to be made in writing: "Any requests to change, renewals, extension, or revocation must be made in writing, sent by certified mail." *See id.*

16.

Plaintiff has never made any changes or modifications to the Guaranty, and Poss has never submitted a request to Plaintiff, either verbally or in writing, requesting any change or revocation of the Guaranty.  The Guaranty, therefore, remains in full force and effect.

17.

After Defendants' execution of the PSP Application and Guaranty, Plaintiff began brokering the sale of eggs to PSP.  In a typical transaction, a PSP representative would either call or e-mail a Plaintiff representative to request a shipment of eggs in a certain quantity.  Thereafter, Plaintiff would arrange for the shipment of eggs in the requested quantity to a location designated by PSP in its order.  Plaintiff would then invoice PSP directly for the shipped products.

18.

A true and correct copy of a sample invoice dated June 30, 2023 ("EU Invoice") is attached hereto as Exhibit "3."  Notably, each EU Invoice submitted to PSP contains the following: "Please note that past due accounts will be charged a finance charge at a rate of 1.5% per month.  Buyer [PSP] agrees to pay seller's [Plaintiff] reasonable collection cost and attorney's fees for past due accounts."  *See* Ex. 3.

19.

Beginning in June 2023, PSP ceased paying for egg shipments brokered by Plaintiff and delivered to the location designated by PSP. Despite PSP's failure to pay, and relying in part on payments ensured by the Guaranty, Plaintiff continued to broker the shipment of eggs to PSP. These brokerage services and shipments continued up to and including January 26, 2024.

20.

As of the filing of this Complaint, PSP has failed to pay the amounts owed on a total of $1,098,891.00 invoices (the "Unpaid Invoices"). True and correct copies of all Unpaid Invoices are attached hereto collectively as Exhibit "4."

21.

Attached hereto as Exhibit "5" is a summary of amounts owed by PSP on the Unpaid Invoices, inclusive of interest on each invoice in the amount of 1.5 percent per month. *See* Summary of Amounts Owed by PSP (attached hereto as Exhibit "5"). As of the filing of this Complaint, the total amount due and owing by PSP (as guaranteed by Poss) equates to: $1,150,517.03.

## Count I

### Action on Open Account
### (PSP)

22.

Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 21, inclusive.

23.

Under the PSP Application, in exchange for Plaintiff's sales and brokerage services, PSP agreed to remit payment for all outstanding invoices within thirty (30) days.

24.

The price of goods provided and services rendered by Plaintiff to PSP were agreed upon by the parties, and PSP fully performed all of its obligations by procuring products and otherwise ensuring that all such products were delivered to PSP at designated locations.

25.

Given Plaintiff's full performance, no other action is required on its part thus compelling PSP to pay for all amounts due under the Unpaid Invoices.

26.

PSP has failed to remit payment to Plaintiff for the Unpaid Invoices.  PSP's failure has caused and continues to cause damage to Plaintiff.

27.

As of the filing of this Complaint, Plaintiff is entitled to damages in the form of payment on all Unpaid Invoices, including interest, in the amount of $1,150,517.03.

## Count II

### Breach of Contract / Action for Price
### (PSP)

28.

Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 27, inclusive.

29.

By its execution of the PSP Application, PSP entered into an enforceable agreement that, in exchange for Plaintiff's sales and brokerage services, obligated PSP to remit payment for all outstanding invoices within thirty (30) days.

30.

Plaintiff has fully performed all of its obligations under the PSP Application by procuring products and otherwise ensuring that all such products were delivered to PSP at designated locations.

31.

PSP has breached the PSP Application by failing to pay for the Unpaid Invoices when due.  PSP's failure to remit payment for the Unpaid Invoices has caused and continues to cause damage

to Plaintiff, constitutes a breach of contract, and entitles Plaintiff to maintain an action for price of all goods delivered (*See generally* O.C.G.A. § 11-2-709) and services rendered.

32.

As of the filing of this Complaint, Plaintiff is entitled to damages in the form of payment on all Unpaid Invoices, including interest, in the amount of $1,150,517.03.

### Count III

### Breach of Contract / Guaranty
### (Poss)

33.

Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 32, inclusive.

34.

Under the terms of the Guaranty, Poss unconditionally guaranteed payment by PSP of all amounts owed to Plaintiff for goods provided and services rendered.  *See* Ex. 1 at p. 2.

35.

PSP has defaulted on its payment obligations under the PSP Application by its failure to remit payment for all sums due under the Unpaid Invoices.

36.

Poss has defaulted under his payment obligations under the Guaranty by not paying all sums due by PSP to Plaintiff under the Unpaid Invoices.

37.

Poss's failure to remit payment to Plaintiff under the Unpaid Invoices constitutes a breach of contract and has caused and continues to cause damage to Plaintiff.

38.

As of the filing of this Complaint, Plaintiff is entitled to damages for Poss's breach of the Guaranty in the form of payment on all Unpaid Invoices, including interest, in the amount of $1,150,517.03.

**Count IV**

**Attorneys' Fees Pursuant to O.C.G.A. § 13-1-11**
**(PSP and Poss)**

39.

Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 38, inclusive.

40.

Under the PSP Application and Guaranty, Defendants agreed to pay all reasonable collection costs, including, but not limited to, attorney's fees incurred by Plaintiff. Additionally, each of the Unpaid Invoices provides that the

11

buyer [PSP] "agrees to pay seller's [Plaintiff] reasonable collection costs and attorney's fees for past due accounts."

41.

The PSP Application, Guaranty and Unpaid Invoices, both individually and collectively (collectively referred to as the "Indebtedness Documents"), constitute evidence of indebtedness pursuant to O.C.G.A. § 13-1-11.  As of the filing of this Complaint, the total amount owed under the Indebtedness Documents, inclusive of both principal and interest, equates to $1,150,517.03 (the "Outstanding Balance").

42.

Pursuant to O.C.G.A. § 13-1-11(a)(3), Defendants shall have ten (10) days from service of this Complaint upon them within which to pay the Outstanding Balance owed under the Indebtedness Documents without the attorneys' fees.  If the Outstanding Balance is paid in full before expiration of this ten-day period, then the Indebtedness Documents' provisions for payment of attorneys' fees shall be void and will not be enforced.  If the Outstanding Balance is not paid in full before expiration of this ten-day period, then the Indebtedness Documents' provisions for payment of attorneys' fees shall be enforced.

43.

Should the Outstanding Balance not be paid within ten (10) days of service of this Complaint upon Defendants, then

...

Defendants shall be liable to Plaintiff for its reasonable attorneys' fees incurred in collecting the Outstanding Balance in an amount not to exceed fifteen percent (15%) of the first $500.00 of the Outstanding Balance and ten percent (10%) of the amount of the Outstanding Balance owed in excess of $500.00.

**Count V**

**Attorneys' Fees Pursuant to O.C.G.A. § 13-6-11 / Alternative to Count IV**
**(PSP and Poss)**

44.

Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 43, inclusive.

45.

Defendants' failure and ongoing refusal to remit payment for the amount due under the Indebtedness Documents constitutes bad faith, stubborn litigiousness, and has caused and continues to cause Plaintiff to incur unnecessary trouble and expenses.

46.

Accordingly, alternative to Count IV, Plaintiff is entitled to attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays that this Court:

(a) Enter judgment in Plaintiff's favor and against PSP on its action on open account;

(b) Enter judgment in Plaintiff's favor and against PSP on its claim for breach of contract / action for price;

(c) Enter judgment in Plaintiff's favor and against Poss on its claim for breach of Guaranty;

(d) Enter judgment in Plaintiff's favor on its claim for attorneys' fees and expenses of litigation;

(e) Award Plaintiff damages in the amount of $1,150,517.03, plus attorneys' fees and expenses of litigation; and

(f)  Award Plaintiff such other relief as this Court deems just and equitable.

Respectfully submitted this 14th day of February, 2024.

**SMITH, GILLIAM, WILLIAMS & MILES, P.A.**
Attorneys for Plaintiff

By:/s/ *R. Brent Hatcher, Jr.*
**R. Brent Hatcher, Jr.**
Georgia Bar No. 337375
**Daniel M. Dupree**
Georgia Bar No. 349494
P.O. Box 1098
Gainesville, Georgia 30503
(T): 770-536-3381
(F): 770-531-1481
bhatcher@sgwmfirm.com

<u>Rule 7.1 Certification</u>

Counsel for Plaintiff hereby certifies that the foregoing document was prepared using Courier New 12 point font, in compliance with LR5.1(c)

STATE OF CALIFORNIA

COUNTY OF ORANGE

**VERIFICATION**

I, Frank Cohen, do solemnly sewar that, as the Chief Financial Officer of Plaintiff Eggs Unlimited, LLC ("Plaintiff" or "EU"), I am authorized to provide this Verification of behalf of EU, that I have read the foregoing Verified Complaint for Damages against Defendants Poss Select Produce, Inc. and Virgil C. Poss III (collectively "Defendants"), and that the information contained therein is, to the best of my knowledge and information, true and correct.

This 13th day of February, 2024.

_____
**FRANK COHEN**

Sworn to and subscribed
Before me this 13th day of February, 2024

_____
Notary Public

My Commission Expires:

[AFFIX NOTARIAL SEAL]

JENNIFER AGUILAR
Notary Public - California
Orange County
Commission # 2384910
My Comm. Expires Nov 30, 2025